**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 06-cv-00788-REB-MEH

DONALD A SYDNEY,

    Plaintiff,

v.

CONMED ELECTRICAL SURGERY, d/b/a ASPEN LABORATORIES, INC.,
RODNEY DAVIS,
DAVE REED, and
RON SHORES,

    Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Blackburn, J.**

This matter is before me on the following motions: 1) **Defendants' Motion and Supporting Brief for Summary Judgment On All Claims** [#38], filed February 15, 2007; and 2) **Plaintiff's Unopposed Motion To Dismiss Claims for Relief Pertaining to Retaliation and Chilling Effect With Prejudice** [#39], filed March 6, 2007. The plaintiff filed a response to the motion for summary judgment [#42], and the defendants filed a reply [#44]. I grant both motions.[1]

**I. JURISDICTION**

---

[1] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the briefs. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.1988) (holding that the hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

I have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal question).

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED.R.CIV.P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party.  **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue.  **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995).  Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  **Concrete Works**, 36 F.3d at 1518.  All the evidence must be viewed in the light most favorable to the party opposing the motion.  **Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services**, 165 F.3d 1321, 1326 (10th Cir.), **cert. denied**, 120 S.Ct. 53 (1999).  However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.  **Rice v. United States**, 166 F.3d 1088, 1092 (10th Cir.), **cert. denied**, 528 U.S. 933 (1999).

### III. SUMMARY OF FACTS & CLAIMS

Defendant, ConMed Electrosurgery, Inc., hired the plaintiff, Donald Sydney, as a service technician on February 9, 1998.  On August 6, 2001, after an interview process and after Sydney passed a technical test, Sydney accepted a position as an Engineering Technician with ConMed.  During the time Sydney held this position, defendant Rodney Davis was an Associate Electrical Engineer in the same department.

In April, 2005, Sydney received his written performance review for the year ending February, 2005.  Alan Lee, who supervised Sydney during the year covered in this review, prepared the written review.  Jim Heller became Sydney's supervisor when Heller began employment with ConMed in April, 2005.  Both Alan Lee and Jim Heller presented the review to Sydney and discussed it with him.  The April, 2005, review included unsatisfactory marks in several areas, including productivity, job knowledge and skill, dependability, initiative and judgment, and analytical ability.  *Motion for summary judgment*, Exhibit A (Sydney deposition), deposition exhibit B.  Following this review, Heller placed Sydney on a performance improvement plan.  Heller met with Sydney to discuss the plan and explained that ConMed expected the plaintiff's performance to improve in the areas identified in the plan.

The performance improvement plan lasted for about three months.  The plaintiff's performance was satisfactory during the first two months of the plan.  During the third month of the plan, ConMed assigned the plaintiff more complex tasks.  At the beginning of the third month, Heller explained to Sydney that an engineering technician was expected to perform these more complex tasks.  Sydney did not successfully complete the third month of the performance improvement plan.  The problems with

3

Sydney's performance in the third month are detailed in a memorandum prepared by Jim Heller, dated July 28, 2005. *Sydney deposition*, deposition exhibit C. On August 4, 2005, ConMed terminated Sydney's employment. Sydney was given the July 28, 2005, memorandum at a meeting held on August 4, 2005.

Sydney is African American. He says that on three occasions while he was employed with ConMed, racially derogatory statements were either made in his presence or directed to him. Sydney says that in 1999, his then supervisor, David Reed, said to him "you Nig will learn something." *Complaint*, ¶ 6. In the fall of 2004, according to the plaintiff, defendant Ron Shores used the term "nigger" in the presence of Sydney, although Shores did not direct the term to Sydney. *Complaint*, ¶ 5; *Sydney deposition*, pp. 22, 24. Finally, Sydney claims that in December, 2004, defendant Rodney Davis referred to Sydney as a "coon." *Complaint*, ¶ 4; *Sydney deposition*, p. 18.

Sydney received and reviewed a copy of ConMed's employee handbook when he began his employment. The handbook states that ConMed prohibits discrimination and harassment on the basis of race. *Sydney deposition*, deposition exhibit D, pp. 5 - 6; deposition exhibit E. The handbook states that employees are expected and encouraged to report harassment to ConMed human resources or to another person in authority. *Id.*, deposition exhibit D, p. 6. Sydney never reported to ConMed human resources or any other ConMed official any of the racially derogatory comments that he alleges were made to him while he was employed at ConMed.

On November 28, 2005, Sydney filed a complaint with the EEOC. *Motion for summary judgment*, Exhibit C. He charged that ConMed had discriminated against him

4

on the basis of his race and claimed that he was subjected to discrimination when his employment was terminated. Sydney's EEOC charge does not describe any other acts of discrimination, acts of retaliation, or acts of racial harassment. The EEOC dismissed Sydney's charge on January 26, 2006. On April 25, 2006, Sydney filed his initial complaint in this case.

The complaint at issue in the motion for summary judgment is Sydney's **Second Amended Complaint and Jury Demand** [#16], filed August 7, 2006. Sydney asserts six claims for relief: 1) termination of employment on the basis of race, in violation of Title VII; 2) retaliation, in violation of Title VII; 3) violation of 42 U.S.C. § 1981, the Equal Protection Clause of the Fourteenth Amendment, and for intentional or negligent infliction of emotional distress against defendant Rodney Davis; 4) violation of 42 U.S.C. § 1981, the Equal Protection Clause of the Fourteenth Amendment, and for intentional or negligent infliction of emotional distress against defendant Ron Shores; 5) violation of 42 U.S.C. § 1981, the Equal Protection Clause of the Fourteenth Amendment, and for intentional or negligent infliction of emotional distress against defendant Dave Reed; and 6) violation of the Civil Rights Acts of 1964 and 1991, and violation of 42 U.S.C. § 1981, based on racial harassment and retaliation. In a motion [#39] filed March 6, 2007, Sydney seeks the dismissal of his second and sixth claims for relief, as outlined above. I grant this motion. Therefore, I will address only Sydney's first, third, fourth, and fifth claims for relief.

### IV. RACE DISCRIMINATION - TERMINATION

Sydney has presented no direct evidence of race discrimination by the supervisor who made the decision to terminate Sydney's employment. Therefore, I

5

employ the familiar burden-shifting analysis of **McDonnell Douglas Corp. v. Green**, 411 U.S. 792, 802-04 (1973). If a plaintiff satisfies the burden of establishing a *prima facie* case of discrimination, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. If defendant meets this burden, then the plaintiff must prove the ultimate fact of discrimination by showing that defendant's proffered reason is pretextual. **See Young v. Dillon Companies, Inc.**, 468 F.3d 1243, 1249 (10th Cir. 2006) (Title VII); **McKnight v. Kimberly Clark Corp.**, 149 F.3d 1125, 1128 (10th Cir. 1998) (ADEA).

### A. Prima Facie Case

To establish a *prima facie* case of race discrimination, the plaintiff must show that 1) he is a member of a protected class; 2) he was qualified to perform his or her job, and was performing his job satisfactorily; and 3) he was discharged under circumstances giving rise to an inference of discrimination. **Salguero v. City Of Clovis**, 366 F.3d 1168, 1175 (10th Cir. 2004). The defendants argue that Sydney cannot establish a prima facie case because there is no genuine issue of material fact about whether or not Sydney was performing his job satisfactorily. The defendants argue that Sydney has acknowledged significant deficiencies in his job performance, which deficiencies were cited as bases for his termination. *Motion for summary judgment*, p. 10. The defendants' citation of record evidence in support of this contention is "*Supra* at 5, pp 12." *Id*. This citation is unintelligibly inexplicit. The full citation that immediately precedes this "*Supra"* citation, is a citation to an opinion of the Untied States Court of Appeals for the Seventh Circuit, which obviously cannot be evidence for the contention that the plaintiff admitted deficiencies in his job

6

performance. The defendants note also that the plaintiff admits sleeping at his desk, but Sydney claims this was done during his lunch hour. *Motion for summary judgment*, p. 10. Presumably, sleeping during one's lunch hour is not cause for termination.

I conclude that the evidence cited by the defendants does not demonstrate that Sydney has admitted to substantial deficiencies in his job performance. For the limited purpose of resolving the motion for summary judgment, I assume, without deciding, that Sydney has established a prima facie case.

### B.  Legitimate, Nondiscriminatory Reasons

ConMed cites several legitimate, nondiscriminatory reasons for Sydney's termination. The deficiencies identified in the July 28, 2005, memorandum included errors in data that Sydney presented as a result of "load curve" measurements performed by Sydney. *Sydney deposition*, deposition exhibit C, p. 1. Heller, Sydney's supervisor, also identified significant deficiencies in Sydney's investigation of a "GFI trip" that Sydney was asked to perform. *Sydney deposition*, deposition exhibit C, p. 2. Heller concluded that this task was "not as complex as many other tasks performed by Engineering Technicians," but that Sydney had not completed the testing properly. *Id.* During this testing, Sydney also modified insubordinately a piece of ConMed equipment, which Sydney had been instructed not to modify. *Id.* Finally, Heller noted in the July 28, 2005, memorandum that Sydney had been observed sleeping at his desk during work hours on four occasions, indicating that his productivity and dependability were not satisfactory. *Id.* Heller personally observed Sydney sleeping at his desk on two occasions. *Id.*

Each of the reasons detailed in the July 28, 2005, memorandum is a legitimate,

nondiscriminatory reason for Sydney's termination. ConMed has met its burden to establish evidence of legitimate, nondiscriminatory reasons for Sydney's termination. Now, it is Sydney's burden to demonstrate that there is a genuine issue of material fact on the ultimate issue of race discrimination by submitting evidence that defendant's proffered reasons for his termination are pretextual.

### C.  Pretext

A reason given for termination is not a pretext for discrimination unless it is shown both that the reason was false and that discrimination occurred. ***St. Mary's Honor Ctr. v. Hicks***, 509 U.S. 502, 515 (1993). In determining whether ConMed's proffered reasons for its decision to terminate Sydney were pretextual, I must examine the facts as they appeared to the person making the decision to terminate Sydney. ***Salguero v. City Of Clovis***,  366 F.3d 1168, 1176 (10th Cir. 2004); ***Furr v. Seagate Technology, Inc.***, 82 F.3d 980, 988 (10th Cir. 1996) ("It is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance."). At this point in the analysis, the defendant is entitled to summary judgment only if the plaintiff has failed to produce any evidence from which a reasonable inference could be drawn that the that the defendants' cited reasons for Sydney's termination were pretextual. ***Salguero***, 366 F.3d at 1176. Typically, a plaintiff may show pretext in one of three ways:1) with evidence that defendant's stated reason for the adverse employment action was false; 2) with evidence that the defendant acted contrary to a written company policy prescribing the action taken by the defendant under the circumstances; or 3) with evidence that the plaintiff was treated differently from other similarly-situated employees who violated work rules of

comparable seriousness.  *Id*.

Sydney argues that he has sufficient evidence to demonstrate that ConMed's legitimate, nondiscriminatory reasons for his discharge are a pretext for race discrimination because he has evidence that Rodney Davis had input into the decision, and that Davis had exhibited racial bias.  It is undisputed that Davis had some input into the information gathered by Heller during the third month of Sydney's improvement plan.  The three matters with respect to which Heller identified Davis's input in the July 28, 2005, termination memorandum do not tend to show that the reasons for Sydney's termination were false or that this decision was infected in any way with Davis's alleged racial bias.

First, as one of Sydney's performance shortcomings, Heller identified Sydney's failure to follow Davis's instructions with regard to a "GFI trip" investigation.  Heller stated that "Rodney Davis advised you that the conditions you were testing were not realistic but you continued to test them."  *Sydney deposition*, deposition exhibit C, p. 2.  Heller concluded that plaintiff's performance was "not satisfactory because [plaintiff] did not conduct realistic tests and failed to change the testing when advised to do so."  *Id*.  Sydney admitted in his deposition that Davis told him on two occasions that he was not doing the "GFI trip"investigation correctly because he was not testing realistic conditions. *Sydney deposition*, pp. 54-56.  However, plaintiff disagreed with and felt free to disregard Davis's input and proceed based upon his own view of how the project should be done.  *Id.*, p. 57.  Sydney does not dispute the accuracy of the statements that Heller attributes to Davis concerning the "GFI trip" investigation.

Second, Heller noted in the termination memorandum that Davis had

instructed Sydney not to modify equipment known as "V&V" units that the Research and Development Department maintained in factory configuration for test purposes. Nonetheless, Sydney modified one such unit. *Sydney deposition*, deposition exhibit C, p. 2. Heller concluded from these events that plaintiff had failed to follow directions given to him. In his deposition Sydney admitted that Davis had told him "[d]on't change anything in these ["V&V"] units" and that despite Davis's instructions, Sydney removed capacitors from one of the "V&V" units. *Sydney deposition*, pp. 60-61. Thus, plaintiff admits the accuracy of Davis's statements upon which Heller based his conclusion that plaintiff failed to follow directions.

Third, Heller noted that Davis, like Heller, had seen Sydney sleeping during work hours. *Sydney deposition*, deposition exhibit C, p. 2. Heller's two observations of Sydney sleeping are sufficient to establish this reason a legitimate, nondiscriminatory reason for termination. There is no allegation or evidence that Heller's observations were infected with racial discrimination. Sydney also has not come forward with evidence that indicates that Davis's alleged racial discrimination affected the termination decision.

Sydney does not dispute the accuracy of the facts stated in the termination memorandum concerning the first and second reasons into which Davis had some input. The third reason, Sydney's sleeping on the job, is established by Heller's independent observations, which are not alleged to have been inaccurate or infected by racial bias.

Further, to the extent Davis had input into the termination decision, I conclude

10

that Sydney has not come forward with evidence that indicates that Davis's input may have been influenced by race discrimination. Sydney cites three points to demonstrate that Rodney Davis was racially biased: 1) Davis listened daily to Rush Limbaugh on the radio; 2) in December, 2004, defendant Rodney Davis referred to Sydney as a "coon"; and 3) in the fall of 2004, defendant Ron Shores, in the presence of both Sydney and Davis's, used the term "nigger," and Davis did not address Shores' use of this term. *Response*, Exhibit 1 (Sydney affidavit), ¶ 13.

There is no authority for the proposition that listening to Rush Limbaugh tends to demonstrate the listener's racial bias. Further, there is no rational basis for Sydney's implied proposition that this is true. Davis's December, 2004, alleged remark, and Davis's alleged non-reaction to Shores' fall, 2004, alleged remark, both are stray remarks that are remote in time from the termination decision. Evidence of such stray remarks is not sufficient to demonstrate racial bias in an employment decision. Particularly in light of Sydney's general agreement about the facts of Davis's statements relayed by Heller in the termination memo, there is no evidence in the record that tends to show a causal connection between the two alleged racial remarks cited by Sydney, and input by Davis into the final evaluation of Sydney, which evaluation led to Sydney's termination. **See, e.g., Rea v. Martin Marietta Corp.**, 29 F.3d 1450, 1457 (C.A.10 (10th Cir. 1994) (isolated comments, unrelated to the challenged action, insufficient to show discriminatory animus in termination decisions; to show animus, plaintiff must demonstrate nexus between allegedly discriminatory statements and defendant's decision).

Sydney has not come forward with evidence that would permit a reasonable

finder of fact to conclude that ConMed's reasons for terminating Sydney were false or that those reasons were influenced by Davis's alleged racial bias. Absent such evidence, a reasonable finder of fact could not conclude that Con Med's reasons for terminating Sydney were a pretext for race discrimination. Therefore, the defendants are entitled to judgment as a matter of law on the plaintiff's race discrimination claims under Title VII and under 42 U.S.C. § 1981.

## V. RACE DISCRIMINATION - HOSTILE WORK ENVIRONMENT

To the extent Sydney's complaint can be read to assert a claim of race discrimination based on a hostile work environment, I conclude that ConMed is entitled to judgment as a matter of law. To establish such a claim, Sydney must present evidence that 1) the harassment was pervasive or severe enough the alter the terms, conditions, or privileges of employment; and 2) the harassment was racial or stemmed from racial animus. **Bolden v. PRC, Inc.**, 43 F.3d 545, 551 (10th Cir. 1994). The plaintiff must show more than a few isolated incidents of racial harassment or enmity. *Id*. The racial comments cited by Sydney are neither pervasive nor severe. Rather, they amount to a few isolated incidents of racial enmity. This evidence is insufficient to support a hostile work environment race discrimination claim, and the defendants are entitled to judgment as a matter of law on this claim.

## VI. TITLE VII CLAIMS AGAINST INDIVIDUAL DEFENDANTS

Sydney's Title VII claims against the individual defendants are invalid. First, "personal capacity suits against individual supervisors are inappropriate under Title VII."
**Haynes v. Williams**, 88 F.3d 898, 901 (10th Cir. 1996). Sydney's supervisors and co-

workers are not subject to individual liability under Title VII.  Second, as the defendants note, Sydney did not file an EEOC charge within 180 days of the date on which the individual defendants allegedly made racially derogatory comments.  For this reason, Sydney's Title VII claim is time barred.  ***National R.R. Passenger Corp. v. Morgan***, 536 U.S. 101, 113 - 114 (2002).

## V.  EQUAL PROTECTION CLAUSE

Sydney's claims under the Equal Protection Clause of the Fourteenth Amendment fail also.  The Equal Protection clause protects only against action by state entities, and provides no protection against action by a private entity, like ConMed or the individual defendants.  ***See Gilmore v. City of Montgomery, Ala.***  417 U.S. 556, 573 (1974) (Supreme Court has never held that Equal Protection Clause is violated by discrimination of private entity, even though entity may receive benefit or service from the state).  Therefore, the defendants are entitled to judgment as a matter of law on Sydney's equal protection claims.

## VII.  INTENTIONAL OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Under Colorado law the tort of extreme and outrageous conduct, or intentional infliction of emotional distress, has three elements: 1) the defendant engaged in extreme and outrageous conduct; 2) recklessly or with the intent of causing the plaintiff severe emotional distress; and 3) which caused the plaintiff to suffer severe emotional distress.  ***See, e.g., Culpepper v. Pearl Street Bldg., Inc.,***  877 P.2d 877, 882 (Colo. 1994).  The level of outrageousness necessary to meet the first element is "extremely high."  ***Archer v. Farmer Bros. Co.***, 70 P.3d 495, 499 (Colo. App. 2002).

> Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient; only conduct that is so outrageous in character,

> and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community, will suffice.

*Id*. The trial court must address the threshold issue of whether the conduct in question is sufficiently outrageous as a matter of law to support a claim of extreme and outrageous conduct. *Id*.

"A mere allegation by an employee that he was dismissed or demoted wrongfully, summarily, or in violation of the employer's policies and procedures fails to state a claim for intentional infliction of emotional distress." ***Bellairs v. Coors Brewing, Co.***, 907 F. Supp. 1448, 1459 (D. Colo. 1995), *aff'd*, 107 F.3d 880 (10th Cir. 1997); ***Grandchamp v. United Air Lines, Inc.***, 854 F.2d 381, 384 (10th Cir. 1998) (Discharge from employment without more is not intentional infliction of emotional distress). Similarly, Sydney's allegation that certain defendants made racial remarks on a few occasions amounts to an allegation of "insults, indignities, threats, annoyances, petty oppressions, or other trivialities" that are insufficient to support this claim. ***Archer***, 70 P.3d at 499.

To recover for negligently inflicted emotional distress under Colorado law, the plaintiff must have been "subject to a direct threat of harm or unreasonable risk of bodily harm "as the result of negligent conduct. ***Card v. Blakeslee***, 937 P.2d 846, 849 (Colo. App. 1997). The Colorado Supreme Court has "never recognized a cause of action for emotional distress grounded in negligence without proof that plaintiff sustained physical injury or was in the 'zone of danger'" of suffering physical injury. ***Culpepper v. Pearl Street Building, Inc.***, 877 P.2d 877, 880 n. 3 (Colo. 1994).  In this case, there are no allegations and no evidence to show that any of the individual

14

defendants ever subjected Sydney to any physical harm or any immediate risk of physical harm. The defendants are entitled to judgment as a matter of law on Sydney's claims of intentional and negligent infliction of emotional distress.

## VIII.  CONCLUSION & ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That **Plaintiff's Unopposed Motion To Dismiss Claims for Relief Pertaining to Retaliation and Chilling Effect With Prejudice** [#39], filed March 6, 2007, is **GRANTED**;

2. That the plaintiff's second and sixth claims for relief are **DISMISSED** with prejudice;

3. That the **Defendants' Motion and Supporting Brief for Summary Judgment On All Claims** [#38], filed February 15, 2007, is **GRANTED**;

4. That the plaintiff's first, third, fourth, and fifth claims for relief are **DISMISSED** with prejudice;

5. That judgment **SHALL ENTER** in favor of the defendants, Conmed Electrical Surgery, d/b/a Aspen Laboratories, Inc., Rodney Davis, Dave Reed, and Ron Shores, and against the plaintiff, Donald A. Sydney;

6. That the Trial Preparation Conference set for October 12, 2007, at 10:00 a.m., and the trial scheduled to commence on Monday, October 29, 2007, are **VACATED**;

7. That any other pending motion or objection, including plaintiff's appeal of magistrate judge's decision [#28], is **DENIED** or **OVERRULED** as moot; and

8. That defendants are **AWARDED** their costs to be taxed by the Clerk of the

Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR. 54.1.

Dated September 24, 2007, at Denver, Colorado.

                **BY THE COURT:**

                <u>**s/ Robert E. Blackburn**</u>
                **Robert E. Blackburn**
                **United States District Judge**